UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
97 DEC 16 PM 4:1

DAVID E. SCARBROUGH and )
PAMELA SCARBROUGH, )
 )
    Plaintiffs, )
 )
vs. ) Civil Action No. CV-97-S-2691-M
 )
CITY OF ALBERTVILLE, a )
municipal corporation, )
et al., )
 )
    Defendants. )
 )

ENTERED
DEC 16 1997

## MEMORANDUM OPINION

This action arises out of the termination of plaintiff's employment as General Manager of utilities for the City of Albertville, Alabama. David E. Scarbrough executed an employment contract with the Municipal Utilities Board of the City of Albertville, Alabama, on November 27, 1989. The Board was created pursuant to Act No. 287 of the Alabama Legislature, enacted on June 28, 1943. That Act vested the Board with authority to employ, among others, managers to operate the city utility system, but provided that in no event could a term of employment exceed one year. (Complaint, Exhibit A, at 1.) The agreement executed by Scarbrough and the Municipal Utilities Board on November 27, 1989, therefore, was for an initial term of twelve months. Nevertheless, the document further provided that, on the first day of each month after November 27, 1990, the employment relationship would be "renew[ed]" on a month-to-month basis for an additional twelve month period.

### FOURTH
### (Term)

The term of Employee's employment shall commence on the 27th day of November, 1989 and shall continue for a period of twelve (12) months from said date. This Agreement for the employment by MUB of Employee shall be renewed on the first day of each month thereafter (until terminated by the death or retirement of Employee or as hereinafter set out) so as to renew the twelve (12) months contractual relationship between the parties to this Agreement as of the first day of each month after the first date of the original term.

(*Id.* at 4.) The contract further provided that the employment relationship could be terminated by the Board or by David Scarbrough upon either party giving the other six months notice of termination, or by majority vote of the Board "for good and sufficient cause":

### FIFTH
### (Termination)

This Agreement shall terminate upon the occurrence of any of the following:

(a) By MUB or the Employee giving to the other party a six month written cancellation and termination of this agreement in which event, MUB would have no further obligation to Employee at the end of said six month period.

(b) By vote of a majority of the Board of MUB at any regular or special meeting for good and sufficient cause, but in no event shall MUB's liability to Employee, if any, for such termination exceed a sum equal to six month's salary.

(*Id.*)

Scarbrough alleges that Board member Kenneth Formby called the Board into "executive session" on August 19, 1997, to discuss "the good name and character of an employee." (Complaint ¶ 9.) During

2

this closed meeting, two members of three-member Board allegedly voted to terminate Scarbrough's employment contract "for cause," effective on August 20, 1997, if he did not agree to resign by 10:00 a.m. on that date. (*Id.* ¶ 10.) Although Scarbrough asked Kenneth Formby to specify the "cause" for which his employment was to be terminated, Formby refused. (*Id.*) Scarbrough did not resign his employment by the Board's deadline. Formby and Hyde then convened a special meeting of the Board on August 21, 1997, at which Scarbrough's employment was terminated "for cause."[1] (*Id.* ¶ 11.) This action was announced to the media and others present at the meeting, but Formby again refused to reveal the "cause" for which plaintiff was being fired.[2] (*Id.* ¶¶ 11-13.)

One week later, Formby and Hyde voted to "rescind" the prior termination of Scarbrough's employment for cause, but then gave six months' written notice of the Board's intent to cancel the employment relationship in accordance with Paragraph 5(a) of the parties' contract. (*Id.* ¶ 14.) The Board now maintains that Scarbrough is on administrative leave until the termination date of his employment: *i.e.*, February 27, 1998. The Board has continued to tender plaintiff's full salary and other employment benefits, but he refuses to accept it.

Plaintiff and his wife filed this complaint in the Circuit Court of Marshall County, Alabama, on September 12, 1997. The

---

[1] Board member McElrath was not in attendance at this meeting and, thus, did not vote.

[2] Plaintiff alleges that Formby prepared a list of nine causes supporting Scarbrough's dismissal, yet Formby has refused to produce the list to anyone, including Board member McElrath.

complaint asserts state law claims against all defendants for breach of contract, unpaid annual leave, defamation, invasion of privacy, intentional infliction of emotional distress, and a claim for loss of consortium by Pamela Scarbrough. Additionally, plaintiff asserts various claims founded on 42 U.S.C. § 1983 and § 1985, each of which is discussed hereafter.

The complaint was removed to this court on October 10, 1997. Jurisdiction over plaintiff's federal claims is proper under 28 U.S.C. § 1441(a); supplemental jurisdiction over plaintiff's state law claims is proper, subject to exercise of this court's discretion, under 28 U.S.C. § 1441(c).

Several motions are pending, including motions to dismiss filed by all defendants. Upon consideration of the pleadings, briefs, and oral arguments of counsel, the court finds that defendants' motions are due to be granted as to each of plaintiff's federal claims. Furthermore, the court declines to exercise jurisdiction over plaintiff's remaining state law claims. Accordingly, this case is due to be remanded to the Circuit Court of Marshall County.

## I. PLAINTIFF'S FEDERAL CLAIMS

Under the liberal pleading requirements of the Federal Rules of Civil Procedure, plaintiffs need only allege "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). For purposes of a motion to dismiss, the factual allegations in the complaint must be taken as true. *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539

4

(11th Cir. 1991), *cert. denied*, 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991). Dismissal is appropriate where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint. *Powell v. United States*, 945 F.2d 374 (11th Cir. 1991).

In pertinent part, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

Thus, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994)(citations omitted). Accordingly, the court's threshold inquiry for each of plaintiff's federal claims is whether he has been deprived of a constitutionally protected right. *See Faucher v. Rodziewicz*, 891 F.2d 864, 869 (11th Cir. 1990).

A.   **Count Six - Equal Protection Claim**

Plaintiff alleges defendants violated the Fourteenth Amendment by refusing to provide reasons for his termination or a post-deprivation hearing pursuant to MUB's "policy of informing employees of the reason or reasons for their termination, and providing employees with an opportunity to be heard on the reasons given." (Complaint ¶ 43-45.) The Fourteenth Amendment's requirement of equal protection "is essentially a direction that all persons similarly situated should be treated alike." *City of*

5

*Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Yet, plaintiff's position is unique. There are no "similarly situated" employees of the Board. He was the only general manager. Plaintiff has neither alleged nor submitted evidence that other persons who allegedly received preferential treatment had been employed under a written agreement similar to his. *See Johnson v. City of Tarpon Springs*, 758 F. Supp. 1473, 1481 (M.D. Fla. 1991)(Fourteenth Amendment claim brought by police department's second in command held without merit because there was no one of "similarly situated" rank or responsibility). Hence, plaintiff's equal protection claim is due to be dismissed for failure to state a claim.

### B. Count Seven - Takings Claim

Plaintiff alleges defendants took his property without just compensation in violation of the Fifth Amendment by

> improperly and/or illegally terminating Scarbrough for "cause" when in fact no such "cause" existed, refusing to advise Scarbrough of the "cause" for which he was fired and terminating Scarbrough without first providing him with an opportunity to be heard.

(Complaint ¶ 51.) Plaintiff's takings claim, like his other federal claims, must be grounded on the existence of a constitutionally protected right. Here, such a right exists, if at all, only if Scarbrough had a property interest in continued employment with the Board. That determination hinges upon state law. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Edwards v. Brown*, 699 F.2d 1073 (11th

6

Cir. 1983). In Alabama, an interest in public employment constitutes a protected property right only where there is "a state statute or ordinance that creates a public employment contract or ... some clear practice or mutual understanding that an employee can be terminated only for 'cause.'" *Douglas v. Evans*, 916 F. Supp. 1539, 1547 (M.D. Ala. 1996) *aff'd*, 116 F.3d 492 (11th Cir. 1997)(emphasis added).

There is no relevant state statute or ordinance applicable to this case; nor was there a "clear practice or mutual understanding" that Scarbrough could be terminated only for cause. Rather, plaintiff's employment contract expressly provided that plaintiff could be terminated either for cause, without notice, or for no cause at all, with six months notice. Essentially, Scarbrough was an at will employee with a contractually-imposed six month notice requirement. The Alabama Supreme Court has held a public employee whose duties are terminable at will has no constitutionally protected property interest in continued employment. *Tripp v. Hall*, 395 So. 2d 33, 34 (Ala. 1981)("[Plaintiff] was an employee whose duties could be terminated at will. Hence, she could have no property interest in continued employment."). Similarly, the Alabama Court of Civil Appeals has held that public employees with annual employment contracts which permitted termination on fifteen days notice had no constitutionally protected property right in their employment, even though those employees received no advance notice of their termination at all, in contravention of the notice

7

clause of their contract. *Gainous v. Tibbets*, 672 So. 2d 800, 805 (Ala.Civ.App. 1995). Thus, under Alabama law, plaintiff had no constitutionally protected property interest in continued employment with the Board.

Additionally, the Fifth Amendment's prohibition against governmental takings without just compensation applies only to takings "for public use." U. S. Const. amend. V; *see Wheeler v. City of Pleasant Grove*, 833 F.2d 267 (11th cir. 1987)(just compensation clause of Fifth Amendment does not apply unless taking is for public use, such as furtherance of public health, safety, morals or welfare). Plaintiff does not allege a "taking" of his job for a public use. Consequently, the Takings Clause of the Fifth Amendment does not apply to this case. For all of the foregoing reasons, Count Seven is due to be dismissed.

C.  **Count Eight - Procedural Due Process Claim**

Plaintiff alleges defendants deprived him of that due process of law guaranteed by the Fifth and Fourteenth Amendments, because he was "never informed of the 'cause' for which he was fired, and was never provided with an opportunity to be heard at any time prior to his termination." (Complaint ¶ 55.) As previously discussed, plaintiff has no constitutional deprivation claim unless he can establish the existence of a constitutionally protected right. Here, for the same reasons set forth in the court's discussion of plaintiff's takings claim, *supra*, plaintiff cannot establish that he had such a right which would have entitled him to

8

due process. Thus, Count Eight is due to be dismissed on that ground alone.

Alternatively, even if plaintiff had a valid property interest in continued employment with the Board, the deprivation of which entitled him to a due process hearing, he was not deprived of that interest because he has an adequate remedy in state court. Under the law of the Eleventh Circuit, no action lies in federal court for an alleged violation of procedural due process through a "non-legislative" act in the public employment context, unless the state fails to provide a means to remedy the alleged violation. *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994)(*en banc*) *cert. denied*, 513 U.S. 1110, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995). Alabama's state court system provides an adequate remedy for any such violation of plaintiff's right to employment with the Board. *See McKinney*, 20 F.3d at 1563. Accordingly, plaintiff's procedural due process claim is due to be dismissed.

D.   **Count Nine - Substantive Due Process Claim**

Plaintiff alleges defendants violated his substantive due process rights under the Fifth and Fourteenth Amendments because they "took Scarbrough's property for improper purposes without just compensation, without first advising Scarbrough of the 'cause' for which he was fired and without first providing Scarbrough with an opportunity to be heard...." (Complaint ¶ 58.) This claim is spurious. The Supreme Court instructs that

> federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made

9

> daily by public agencies. We must accept the harsh fact
> that numerous individual mistakes are inevitable in the
> day-to-day administration of our affairs. The United
> States Constitution cannot feasibly be construed to
> require federal judicial review for every such error. In
> the absence of any claim that the public employer was
> motivated by a desire to curtail or to penalize the
> exercise of an employee's constitutionally protected
> rights, we must presume that official action was regular
> and, if erroneous, can best be corrected in other ways.
> The Due Process Clause of the Fourteenth Amendment is not
> a guarantee against incorrect or ill-advised personnel
> decisions.

*Bishop v. Wood*, 426 U.S. 341, 349-50, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976)(footnote omitted). The Eleventh Circuit has held that "areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the due process clause because 'substantive due process rights are created only by the Constitution.'" *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994)(en banc)(quoting *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985)).

Even if plaintiff's claim was cognizable as a violation of substantive due process, the claim is due to be dismissed because plaintiff has not pled facts which could establish that he held a constitutionally protected interest in continued employment with the Board. The court is convinced that no construction of the facts as pled would support such a claim. Absent a right subject to constitutional protection, no claim for a violation of substantive due process will lie. Accordingly, Count Nine is due

10

to be dismissed.

E.  **Count Ten - Publication of Stigmatizing Information**

Plaintiff alleges in Count Ten that defendants "deprived Scarbrough of a liberty interest without due process of law by falsely informing the public that Scarbrough was fired for cause, when in fact, no such cause existed." (Complaint at 13, ¶ 61.) Every defamatory remark by a public official does not rise to the level of a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Siegert v. Gilley*, 424 U.S. 693, 702, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1991). Injury to reputation alone is not a "liberty" interest invoking constitutional protection.[3] *Siegert*, 424 U.S. at 702, 96 S.Ct. at 1161. The Fourth Circuit has recognized that:

> Certainly, a person who has been fired y be somewhat less attractive to other potential employers, but it would be stretching the concept too far to conclude that a person's liberty interest is impaired merely because he has been discharged.

*Bunting v. City of Columbia*, 639 F.2d 1090, 1095 (4th Cir. 1981)(citing *Board of Regents v. Roth*, 408 U.S. 564, 575, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972)("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another")(citation omitted)).

Moreover, this court is not persuaded that the remarks attending Scarbrough's termination, even as pled, constitute a

---

[3] The validity of plaintiff's state law claim for defamation is entirely unaffected by the court's analysis of the federal constitutional question discussed in this section.

11

stigma sufficient to intrude on his freedom to seek and gain new employment. To prove deprivation of a liberty interest, a claimant must "establish that his termination was attended by stigmatizing charges which 'might seriously damage his standing and associations in his community' or foreclose 'his freedom to take advantage of other employment opportunities.'" *Clemons v. Dougherty County*, 684 F.2d 1365, 1371 (11th Cir. 1982)(quoting *Dennis v. S & S Consolidated Rural High School District*, 577 F.2d 338, 342-43 (5th Cir. 1978)). In *Sullivan v. School Board of Pinellas County*, 773 F.2d 1182, 1187 (11th Cir. 1985), an assistant school superintendent was terminated because "she was unable to perform her job because she was adversarial and unable to get along with and gain the respect of her coworkers." *Id.* at 1187. Those reasons were publicly disclosed by the school board only at the insistence of the fired employee, who then sued the school board, alleging deprivation of a liberty interest through stigmatization. The Eleventh Circuit held that

> the reasons given for Ms. Sullivan's nonrenewal do not implicate a liberty interest. Without suggesting that to implicate a liberty interest the charge or allegation must involve dishonesty or immorality, we do not find the comments regarding Ms. Sullivan's nonrenewal to be comments that place "a person's good name, reputation, honor, or integrity ... at stake" or that foreclose Ms. Sullivan's "freedom to take advantage of other employment opportunities."

*Id.* (quoting *Clemons*, 684 F.2d at 1371-73).

In the case *sub judice*, defendants have repeatedly refused to disclose the reasons for Scarbrough's termination "to Scarbrough,

12

the media, the public or even the third Board member, Wayne McElrath." (Complaint ¶ 13; *see also id.* ¶¶ 10-12, 15.) All that defendants have said publicly is that Scarbrough "could be fired with or without cause and that Scarbrough had in fact been fired as MUB's General Manager 'for cause.'" (*Id.* ¶ 11.) Standing alone, those remarks do not implicate a stigma of constitutional magnitude. Scarbrough's "standing and associations in his community" are not "seriously damaged" by those remarks; nor do they "foreclose 'his freedom to take advantage of other employment opportunities.'" See *Clemons*, 684 F.2d at 1371.

Additionally, even if this court found that defendants' remarks rise to the level of a constitutional stigma, plaintiff cannot establish the element of publication. No claim for deprivation of a liberty interest will lie for "the discharge of a public employee whose position is terminable at the will of the employer when there is no public disclosure of the reasons for the discharge." *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079 (citing *Roth*, 408 at 575, 92 S.Ct. at 2708). The Eleventh Circuit holds that a plaintiff fails to satisfy the requirement of publication when he "fail[s] to establish that any disclosure of the 'reasons for the discharge,' that is, the substance of the complaints, was ever made to the general public." *Thomason v. McDaniel*, 793 F.2d 1247, 1250 (11th Cir. 1986). To date, defendants have refused to disclose the reasons for Scarbrough's discharge to the general public or, for that matter, to anyone else

13

including Scarbrough. For those reasons, the court finds that plaintiff has failed to state a claim for constitutional deprivation of a liberty interest based on publication of stigmatizing information. Accordingly, Count Ten is due to be dismissed.

### F. Count Eleven - Conspiracy to Violate Scarbrough's Constitutional Rights

Plaintiff alleges that defendants conspired to terminate Scarbrough's employment "for the purpose or purposes of depriving Scarbrough of his constitutional rights...." (Complaint at 14, ¶ 64-65.) Count Eleven is based on 42 U.S.C. § 1985(3), providing in pertinent part:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is ... deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The Supreme Court instructs that § 1985 creates no substantive rights; rather, the rights it "vindicates must be found elsewhere." *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 833, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983). Here, plaintiff alleges that the substance of his conspiracy claim is found in the constitutional rights which he asserts have been violated by defendants. The court has previously determined that

14

plaintiff's constitutional deprivation claims are due to be dismissed. Thus, plaintiff has no underlying constitutional claim on which to rest his conspiracy claim.

Furthermore, even if plaintiff's conspiracy claim were premised on a valid claim of constitutional deprivation, it fails for another reason. As pled by plaintiff, all defendants are part of a single municipal corporation, the City of Albertville. (Complaint at 2, ¶¶ 2-3.) The complaint states that the defendant Board "is an agency of the City," and "[t]he City, act[ed] by and through its Municipal Utilities Board." (*Id.* at ¶ 2.) Plaintiff avers that defendants Formby and Hyde "at all times material hereto, were members of the Board of Directors of MUB acting within the line and scope of their authority." (*Id.* at ¶ 3.) Thus, plaintiff alleges, and this court must accept as true, that all defendants are part of a single municipal corporation. Yet, a single entity cannot conspire with itself.[4] The Eleventh Circuit has upheld the dismissal of a § 1985(3) claim for similar reasons:

> A corporation is an amorphous entity having no substance except in law. It can only act through its officers, agents and employees. A conspiracy requires the combination of two or more persons--i.e., the meeting of two independent minds intent on one fell purpose. Since the collective "minds" of a corporation's officers, agents, and employees constitute the single "mind" of the corporation, corporate officers, agents and employees, while acting within their scope of employment, are incapable as a matter of law of conspiring among themselves or with the corporation. To hold otherwise would be tantamount to saying that a person or entity may be liable for conspiring with themselves.

---

[4] Indeed, under the plain language of § 1985(3), a conspiracy requires "two or more persons." 42 U.S.C. § 1985(3).

15

*Baker v. McDonald's Corp.*, 686 F. Supp. 1474, 1479-80 (S.D. Fla. 1987), *aff'd*, 865 F.2d 1272 (11th Cir. 1988)(citations omitted); *accord Mitchell v. Carrier Corp.*, 954 F. Supp. 1568, 1575 (N.D. Ga. 1995)("a corporation cannot conspire with its own employees"). Consequently, this court finds that plaintiff's conspiracy claim is due to be dismissed because defendants, acting at all relevant times as one, cannot conspire alone.

Moreover, the Eleventh Circuit holds that, "[i]n conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman v. Graddick*, 739 F.2d 553, 556 (11th Cir. 1984). Additionally, a "complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy." *Id.* at 557. Plaintiff has not directed this court to any specific facts which could support a conspiracy claim based on constitutional violations. Instead, plaintiff incorporates every fact, whether relevant or not, into each of the thirteen counts in his complaint. None of those facts demonstrate how or why the defendants conceived, planned, or carried out the alleged conspiracy. For the foregoing reasons, plaintiff has failed to state a claim under § 1985(3) and, thus, Count Eleven is due to be dismissed.

## II. SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS

Federal jurisdiction over pendent state law claims is governed by 28 U.S.C. § 1367(a) which provides that:

16

in any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Even so, "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). This court exercises its discretion and declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims. Accordingly, the complaint is due to be remanded to the Circuit Court of Marshall County, Alabama.

### III. PLAINTIFF'S MOTION TO AMEND COMPLAINT AND FOR IMMEDIATE HEARING

Because the court declines to exercise jurisdiction over the state law claims at the heart of plaintiff's motion, the matters raised therein will not be addressed by this court. Plaintiff may pursue his claims, and prosecute the pending motion, in state court following remand.

### IV. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are due to be granted as to all federal claims. Accordingly, this case is due to be remanded to state court for adjudication of plaintiff's state law claims and plaintiff's pending motion. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

17

DONE this $16^{\underline{th}}$ day of December, 1997.

United States District Judge

18